the partnership, to the amount of $1,378.62 more than there were partnership effects in his hands.

Verdict for the plaintiff, subject to the opinion of the court on the above facts.

Judgment for the plaintiff, (nem. con.) on the ground that T. Moore had the power to settle the account, and had actually discharged the defendant from the demand of H. & T. Moore, by closing their account; and having actually set off the debts against each other before the bankruptcy. Quære.

# P.

## Case No. 10,640.

### In re PACE.

### [1 Tex. Law J. 315.]

District Court, W. D. Texas. May 9, 1878.

BANKRUPTCY — CARE OF PROPERTY BY MARSHAL— EXPENSE OF GUARD—NECESSITY—PER DIEM CHARGE.

1. Marshals are not entitled to per diem service for holding, constructively, possession of bankrupt property.

2. They may be allowed $2.50 per day as a disbursement paid to a guard to watch the property, on proof that a prudent caution for the care of the property required it, and the time the guard was so actually engaged in watching it, and that the disbursement charged has been actually paid.

3. The oath of the marshal is not conclusive as to the necessity of expenses charged in his account.

In bankruptcy.

By S. T. NEWTON, Register:

Pursuant to the special order of this honorable court, made and entered at Tyler on the 9th inst., referring to me the motion of H. C. Hunt, assignee of said bankrupt's estate, to retax the fee bill of Thomas F. Purnell, United States marshal in and for said district, for his service as such marshal in seizing and in the custody of a stock of merchandise belonging to said bankrupt, at Ft. Worth, in the county of Tarrant, in said district. I ordered a hearing of said matter before me at my office, at Tyler, on the 9th inst., and was attended at the hearing by John L. Henry, Esq., attorney for said assignee, and E. R. Purnell, United States deputy marshal.

From the testimony adduced I find the following facts: (1) That John A. Pace, residing at Ft. Worth, in said county of Tarrant, filed his petition in voluntary bankruptcy in United States district court, at Tyler, on the 28th day of January, A. D. 1878, and was adjudged a bankrupt by said court. (2) That some time prior to that date, W. D. Cleveland, one of the creditors of said bankrupt, had commenced suit before one McClung, a justice of the peace, for the recovery of a debt due from said bankrupt to said creditor, and that on the day of the filing of the petition in bankruptcy the said creditor recovered judgment against said bankrupt for his debt, with notice of the commencement of proceedings in bankruptcy, from which judgment the said bankrupt, by his attorneys, gave notice of appeal. (3) That on the 29th day of January, A. D. 1878, the day after the rendition of the judgment aforesaid, the plaintiff in said suit applied for and had execution issued, which was placed in the hands of one W. J. Crozier, bailiff, who levied on a portion of the stock of merchandise then in the possession of said bankrupt, and advertised the same for sale. (4) That on the 29th day of February, next thereafter, the attorneys of said bankrupt applied to this honorable court for and obtained a writ of injunction restraining the said bailiff and other parties in interest from further proceeding in the sale of said property, and by virtue of which said restraining order, one T. J. Courtney, a special deputy United States marshal seized and took possession of the stock of merchandise so levied upon by said bailiff, and also the remaining portion of the stock of merchandise belonging to said bankrupt, and his other property, and proceeded to make an inventory thereof as required by law. (5) That after making the inventory of the stock of merchandise the said United States deputy marshal moved said stock of merchandise to another room or building, locked the door, and delivered the key to said bankrupt, leaving the same in his care and custody, and returned to the city of Austin, some 267 miles distant from the residence of said bankrupt; that said deputy United States marshal left no watch, nor employed any one to look specially after or guard said property, but told said bankrupt to request a policeman to give it some extra attention, for which he would pay him, but the evidence does not show that any such attention was given; that no charge was made by the policeman, and that no disbursement was made by the United States marshal, or his deputies, to any one, for the time the goods were left in charge of said bankrupt; and that the goods so remained in the charge of the said bankrupt until he turned them over to said assignee, which the evidence shows was about the 25th day of February, A. D. 1878, 15 days from the time of the seizure of said goods by the United States deputy marshal.

From an inspection of the motion of the assignee, I find only two items in the marshal's cost bill to which exceptions are taken,

and which will be noticed: Item 6. "Custody of goods from February 8, 1878, to 23d of February, 1878, 15 days at $5 per day." Item 14. "Postage, $5.04."

General order No. 30, promulgated by the justices of the supreme court on the 11th of April, A. D. 1875, provides specifically for the fees of the United States marshal, as follows: "The marshal shall be allowed for each hour necessarily employed in making the inventory of bankrupt's property, one dollar." "For each hour actually and necessarily employed in personal attention, in taking care of bankrupt's property, one dollar." No other allowance to be made for the custody of property except for actual disbursements, which shall in all cases be passed upon by the court.

The fourth subdivision of section 5126, Rev. St., which provides for the payment of priority claims out of the bankrupt's estate by the assignee, before declaring a dividend, declares: "For the custody of property, publication of notices, and other services by the United States marshal, his actual and necessary expenses, upon returning the same in specific items, and making oath that they have been actually incurred and paid by him, are just and reasonable, the same to be taxed and adjusted by the court, and the oath of the messenger shall not be conclusive as to the necessity of such expenses." For cause shown and hearing thereon, such further allowance may be made as the court, in its discretion, may determine.

This section would seem to modify general order No. 30, in so far as to allow the messenger, for the custody of property, his actual and necessary expenses. Said section further provides that the marshal cannot charge for expenses of keeping property more than $2.50 per day, and such amount, before being allowed, must be shown to have been actually incurred and actually paid.

The testimony in this case does not show that the United States marshal or his deputies gave their personal attention to this property from the time it was deposited in the storehouse and the key delivered to the bankrupt until it was turned over to the said assignee. Nor does the testimony show that either the marshal or his deputies made any disbursements, or expended any money for the keeping and custody of said property during the period of time the property was so under the charge of said bankrupt; but it is contended by the marshal that, though his personal attention was not given to the care of the property, or that he made no disbursement for the custody of it, being in the constructive possession of it, and being, as he claims, responsible for it, the charge is proper and ought to be allowed. I do not think this is the law, for the fees to be allowed are all specific, prescribed by statute and by general order No. 30, and the power of the court to make further allowances is taken away; and, in the custody of property, except as regards the marshal's personal attention, actual

disbursements only are to be allowed, and which must be passed on by the court.

I think the intention of the law is that the property of the bankrupt shall be securely kept by the marshal from the time it comes into his possession, and has provided that, if he cannot give it his personal attention, he may employ a watch to guard it, and allows him a disbursement, for that purpose, of $2.50 per day for the time the property is so guarded, and this can only be allowed as an actual disbursement. If the theory is correct that the constructive possession of the bankrupt's property would entitle the marshal to a fee of $5 per day, he might hold constructively the possession of a large number of bankrupt estates at the same time, of much value, at many miles' distance from his place of business, bringing a handsome revenue to the office, which, in the event of being destroyed by fire or other accident, would force the creditors of these estates to the remote contingency of making the marshal responsible for them. So liberal an interpretation, I think, cannot be fairly given to the statute. In view of the law and general order No. 30, regulating the fees of the marshal, I am of the opinion the exception to item 6 in the marshal's account was properly taken.

In reference to item 14, "Postage, $5," I think cannot be allowed without further proof, and the exception to it should be sustained. In re Johnston [Case No. 7,421]; In re Comstock [Id. 3,075]; In re Burnell [Id. 2,171].

DUVAL, District Judge. The foregoing report and opinion of Mr. Register NEWTON, having been read and considered, I concur with him in the conclusions arrived at, and, therefore, approve and affirm his decision.

---

## Case No. 10,641.

PACHECO v. UNITED STATES.

[Hoff. Land Cas. 113.] [1]

District Court, N. D. California. Dec. Term, 1855.

### LAND CLAIMS—FREMONT'S CASE.

This claim entitled to confirmation under the ruling of the supreme court in U. S. v. Fremont [18 How. (59 U. S.) 30].

Claim for eleven leagues of land in Mariposa county, rejected by the board, and appealed by the claimant [Juan Perez Pacheco].

Stanly & King, for appellant.
S. W. Inge, U. S. Atty., for appellee.

HOFFMAN, District Judge. The claim in this case is founded on a grant made by Governor Micheltorena on the fourth of November, 1843.

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]